IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JEROME TOTTEN                                                                    PETITIONER

V.                                                        CIVIL ACTION NO.: 3:17-CV-205-SA-DAS

FRANK SHAW, and
ATTORNEY GENERAL
OF THE STATE OF MISSISSIPPI                                          RESPONDENTS

MEMORANDUM OPINION AND ORDER

Petitioner Jerome Totten, a Mississippi inmate proceeding *pro se*, has filed a federal habeas

petition pursuant to 28 U.S.C. § 2254 challenging the convictions and sentences for burglary of a

dwelling and grand larceny that he received in the Circuit Court of Tate County, Mississippi.

Having considered the submissions of the parties, the State-court record, and the law applicable to

Totten's claims, the Court finds that an evidentiary hearing[1] is not warranted, and that the petition

should be denied.

I.
Background Facts and Procedural History

In March 2012, Tate County resident, Corey Rakestraw, was test-driving his newly-

repaired dirt bike near his home when a man in a white, extended-cab pickup stopped him to ask

if the bike was for sale. After a brief conversation that concluded with no sales transaction

occurring, Rakestraw returned home. As he turned into his driveway, Rakestraw noticed that the

white truck followed behind him, looking toward the Rakestraw home as he passed by slowly.

A few days later, Rakestraw left town for two weeks for work. His wife and children stayed

with extended family while he was gone. When Rakestraw returned home on April 11, 2012, he

discovered that his home had been burglarized. Among the items missing from the home were a

---

[1] The Court previously found that it was precluded from holding an evidentiary hearing in this cause. *See* Doc. #22.

clothes dryer, two chainsaws, an Amish-style heater, a laptop, and tools. Rakestraw notified the Tate County Sheriff's Department of the burglary and contacted a local pawn shop owned by Eddie Archer to ask the shop employees to watch for the stolen items. The pawn shop employee who answered Rakestraw's call put him in touch with Marshall County Sheriff's Department Investigator, Jason Mills, who informed Rakestraw that the sheriff's department had recently recovered a heater and a laptop from community members who believed the items might have been stolen as part of a recent string of church burglaries that were under investigation. Specifically, a local woman named Annie Davis had purchased a heater from Jerome Totten for $10 and turned it over to the police, believing that it might be stolen. A laptop was recovered after Totten attempted to sell it to Bo Mims, who, at the request of pawn shop owner Eddie Archer, was on the lookout for a laptop stolen from a local church. The heater and laptop were not linked to the church burglaries, however, but were both identified by Rakestraw as property stolen during the burglary of his home in Tate County. Trial testimony established that when Rakestraw identified the recovered computer as his property, he and his wife also identified a disk found inside the laptop as a medical terminology disk belonging to his wife.

At trial, Rakestraw identified Totten as the man who asked about buying his dirt bike. The heater and laptop had previously been returned to him, so he identified police photographs of the recovered items as his personal property. He also testified as to the value of the items stolen from his home, which totaled at least $1,860. Annie Davis and Bo Mims testified that they had received the stolen heater and laptop directly from Totten. Totten testified on his own behalf and argued that, because he had a good job, he was not motivated to commit the burglary. The court denied Totten's motion for a directed verdict.

The jury returned a unanimous verdict of guilty on both the burglary and grand-larceny counts. Totten was sentenced as a habitual offender to twenty-five years for burglary and ten years for grand larceny, to be served concurrently. The court denied his post-trial motions.

Following the trial, the court permitted Totten's counsel was to withdraw, and the Office of Indigent Appeals were appointed to assist Totten in his appeal. On appeal, the Mississippi Supreme Court affirmed the judgment of the circuit court. *Totten v. State*, 166 So. 3d 32 (Miss. 2015), *reh'g denied*, June 25, 2015 (Cause No. 2013-KA-01768-SCT). Certiorari review was denied on October 13, 2015. *See* Doc. #24-2.

Proceeding *pro se*, Totten filed an application for post-conviction review in the Mississippi Supreme Court. By Order filed June 15, 2017, the Mississippi Supreme Court denied Totten's application. *See* Doc. #24-3 (Cause No. 2016-M-00937).

On or about October 5, 2017, Totten filed the instant action, raising the following twenty-six claims for review, as paraphrased:

| Ground One: | Whether the court erred by allowing an electronic device to be used to keep petitioner from objecting. |
|---|---|
| Ground Two: | Whether the court erred in allowing evidence known to be false. |
| Ground Three: | Whether the court erred in a deliberate suppression of evidence favorable to petitioner. |
| Ground Four: | Petitioner was denied due process of law or counsel when he was denied an initial appearance and preliminary hearing within 48 hours of arrest. |
| Ground Five: | Petitioner's rights under the Mississippi Constitution and the United States Constitution were violated when the magistrate had no facts in the warrant affidavit to issue a warrant for burglary. |
| Ground Six: | Petitioner's due process rights were violated when the Sheriff's Department failed to preserve the evidence. |
| Ground Seven: | Petitioner was denied due process when the State failed to comply with its obligations under Mississippi Uniform Criminal Rules of Circuit Court Practice 4.06. |
| Ground Eight: | Petitioner's rights under the United States and Mississippi Constitutions were violated when the prosecution used hearsay evidence of a disk, and |

petitioner was not given an opportunity to cross-examine the owner of the disk.

Ground Nine:      Petitioner's rights under the United States and Mississippi Constitutions were violated by the state presenting false evidence in trial and on appeal.

Ground Ten:       Counsel rendered ineffective assistance in failing to object to the prosecutor's improper comments in front of the jury and during closing arguments of the guilt phase of trial.

Ground Eleven:    Counsel rendered ineffective assistance in failing to object to the prosecutor's presentation of false witness testimony and by the offer of inadmissible      hearsay evidence of a disk.

Ground Twelve:    Counsel rendered ineffective assistance in failing to object to the fact that the prosecutor lied about having all evidence in her possession, as the evidence had already been returned.

Ground Thirteen:  Petitioner was denied due process and a fair trial when the trial judge overruled jury instruction S-5 and when the prosecutor intentionally misstated the evidence. Counsel was ineffective in failing to preserve this issue for appeal.

Ground Fourteen:  Petitioner was denied process when the State argued facts outside of the record on appeal.

Ground Fifteen:   Petitioner was denied his right to counsel when he was denied a right to be heard by counsel.

Ground Sixteen:   Petitioner was denied his right to counsel when counsel failed to perfect the appeal.

Ground Seventeen: Trial counsel was ineffective when he failed to make use of impeaching evidence.

Ground Eighteen:  Petitioner was denied his right to fair trial when counsel failed to adequately investigate and argue the lack of probable cause for his arrest.

Ground Nineteen:  Trial counsel was ineffective in failing to file a motion to suppress evidence.

| | |
|---|---|
| Ground Twenty: | Trial counsel was ineffective for failing to object to the prosecution's discovery violation. |
| Ground Twenty-One: | Trial counsel was ineffective in failing to object to the disk that served as the State's proof of property. |
| Ground Twenty-Two: | Trial counsel was ineffective in failing to object to fact that there was no opportunity to cross examine the owner of the computer and disk. |
| Ground Twenty-Three: | Trial counsel was ineffective in failing to have the State give a proper chain of custody with the evidence. |
| Ground Twenty-Four: | Trial counsel was ineffective in failing to subject the prosecution's case to meaningful adversarial testing. |
| Ground Twenty-Five: | Appellate counsel was ineffective in failing to get the complete trial record of all trial exhibits and to use plain error when the State had no proof of the disk. |
| Ground Twenty-Six: | The cumulative errors that occurred during the petitioner's case denied him of his constitutional rights. |

Respondents answered the petition on April 17, 2018, conceding that all federal habeas issues raised by Totten were exhausted in State court. Doc. #24. On or about June 19, 2018, Totten filed a response to the answer. Doc. #32.

## II.
## Legal Standard

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of

facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" clause where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id.* at 407-08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable − a substantially higher threshold."); *Williams*, 529 U.S. at 410-11; *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) (finding habeas relief merited where state decision was both incorrect and objectively unreasonable). When evaluating the evidence presented in state court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III.
### Claims

### A.  Ground One

In Ground One, Totten claims that he was denied due process because an electronic device was placed on him during trial, thereby hindering his ability to raise objections without being shocked. Therefore, he claims, the device hindered his ability to participate in his own defense, and the circuit court erred in its duty to see that Totten was able to aid in his defense and receive a fair trial.

During the hearing on post-trial motions, Totten informed the trial court that an officer had placed an "electronic shock device" on him, telling him that it would electrocute him if he objected to anything that occurred at trial. Doc. #25-4 at 27. He stated "[t]hat's the reason why I didn't stand up and saying nothing." *Id.*

The Mississippi Supreme Court found no factual support for Totten's claim, noting:

> Totten argues that he was denied due process due to the presence of an electronic device on him during trial. He states in his supplemental brief that he was afraid to participate verbally in his defense because he was afraid of being shocked. This argument is without merit. As an initial matter, this argument is without merit because there is no factual support in the record that an electronic device to shock him was placed upon him during trial. The record does show that, not only did Totten testify at length on the stand in his own defense, but he was very vocal during the trial proceedings, telling his attorney questions to ask, addressing the bench, and at one point insisting on getting rid of his attorney before deciding to keep him during a recess. He was allowed every opportunity to testify and provide input for his own defense.

*Totten*, 166 So. 3d at 36.

There is no evidence in the record, other than Totten's unsupported allegation during post-hearing motions, that he was subjected to the use of an electronic shocking device during trial. Rather, the record demonstrates he was quite vocal about his attorney's performance, that he communicated with counsel before the cross-examination of prosecution witnesses, that he submitted specific questions to his counsel that were asked in open court, and that he testified in his own defense. *See, e.g.*, Doc. #25-2 through Doc. #25-4 at 5. Therefore, the Court finds that the decision rejecting this claim does not warrant relief under the AEDPA.

## B. Ground Two

In Ground Two, Totten claims that the prosecution knowingly presented false evidence, and that the trial court was aware the evidence was false. Specifically, Totten alleges that Corey Rakestraw initially testified that he knew his tools were stolen while he was still out of town because his wife went by their house and discovered them missing, while he later testified that he

did not believe that his wife told him that his tools were missing prior to his discovery of the burglary.

A witness' inconsistent testimony raises a credibility issue to be resolved by the jury; such inconsistencies are insufficient to establish that the testimony was perjured. *See, e.g., Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Therefore, what Totten characterizes as false evidence falls within "the sole province of the jury" as a credibility determination. *See Jones v. Bingham*, No. 2:07CV173, 2009 WL 927031, at *5 (N.D. Miss. April 2, 2009). Accordingly, these allegations do not state a constitutional claim, and the decision rejecting this claim does not warrant relief under the AEDPA.

### C. Grounds Three and Six

In Grounds Three and Six, Totten argues that the trial court erred by allowing the prosecution and the Sheriff's Department to suppress favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, Totten claims that the prosecution withheld a medical terminology disk and family photographs used by prosecution witnesses at trial to identify the recovered stolen computer. Totten argues that because the laptop, heater, and disk were not physically produced at trial, the prosecution suppressed evidence that he could have used to test the State's case.

The Supreme Court has held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. To establish a *Brady* claim, a habeas petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, either because it was exculpatory or impeaching, and (3) the evidence was material. *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996) (quotation marks omitted); *see also Giglio v. United States*, 405 U.S. 150, 154 (1972).

At trial, Rakestraw identified a photograph of the recovered computer as the stolen property at issue. Doc. #25-2 at 67-68. Bo Mims identified the same photograph as containing an image of the computer Totten attempted to sell him. Doc. #3 at 44-45. There is no evidence that the evidence was suppressed by the prosecution; the computer and its contents had been returned to Rakestraw well in advance of trial, and there is no evidence or inference that the evidence was exculpatory or impeaching. Rather, given the overwhelming evidence that Totten was the individual who stole the computer, the production of the terminology disk and family photographs would have been of little value to the defense. *See Spence*, 80 F.3d at 995 (noting materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence produced by the State). Accordingly, these allegations do not state a constitutional claim, and the decision rejecting this claim does not warrant relief under the AEDPA.

### D. Ground Four

In Ground Four, Totten claims he did not receive an initial appearance, preliminary hearing, or the timely appointment of counsel following his arrest, in violation of both Mississippi and constitutional law.

The Fourth Amendment requires a judicial determination of probable cause as a prerequisite to the extended restraint of liberty following arrest. *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). A probable cause determination should be made within forty-eight hours following a warrantless arrest. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). However, even assuming that Totten was not afforded a probable cause hearing within forty-eight hours of his arrest, the Supreme Court has held that "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." *Gerstein*, 420 U.S. at 119. Therefore, Totten is not entitled to habeas relief on this ground.

To the extent that this claim could also be construed as a Sixth Amendment claim for the denial of appointed counsel, the Court notes that "[t]he Sixth Amendment right to counsel attaches

upon the initiation of judicial proceedings." *United States v. Laury*, 49 F.3d 145, 150 (5th Cir. 1995). This right is violated only if a criminal defendant is denied the assistance of counsel at a critical stage of prosecution, such as arraignment, initial appearance, or preliminary hearing. *See, e.g.*, *Shankles v. Dir., TDCJ-ID*, 877 F. Supp. 346, 355 (E.D. Tex. 1995). Here, Totten was indicted on March 20, 2013. Doc. #25-1 at 7. He was appointed counsel by order entered May 20, 2013. *Id.* at 13. Even though counsel was not formally appointed until May 20, 2013, it is apparent that he was acting as Totten's attorney at least by April 15, 2013, as he filed a discovery motion on Totten's behalf on that date. *See* Doc. #24-5; Doc. #25-1 at 5. The State responded to that discovery request on May 3, 2013. *See, e.g.,* Doc. #25-6 at 202-04. Totten was arraigned on August 28, 2013. Doc. #24-4. There is no indication in the record that Totten faced a preliminary hearing or arraignment prior to his arraignment on August 28, 2013, and therefore, he suffered no Sixth Amendment violation regarding his right to counsel. Accordingly, the rejection of these claims does not warrant relief under the AEDPA.

### E. Ground Five

In Ground Five, Totten contends that the affidavit submitted in support of his arrest warrant was a "bare-bones affidavit" that lacked sufficient probable cause in violation of his constitutional rights. However, because Totten had an opportunity to fully and fairly litigate this Fourth Amendment claim in State court, his current challenge is precluded from habeas review. *Stone v. Powell*, 428 U.S. 465 (1976); *see also* Doc. #25-7 at 20-28. Totten bears the burden of demonstrating that he was denied full and fair litigation in State court to overcome the bar to his claim, and he has failed to meet that burden. *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986) (holding petitioner must plead and prove the denial of a full and fair hearing in state court). Although Totten disagrees with the State court's resolution of his claim, he has not demonstrated that he was prevented from litigating this issue, and he is not entitled to habeas relief on this ground. *See Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980) (holding *Stone* bars Fourth Amendment claim even where State court made error in deciding merits of case or in making a

procedural mistake that prevents presentation of the claim). Accordingly, the decision rejecting this claim does not warrant relief under the AEDPA.

## F. Ground Seven

In Ground Seven, Totten claims the trial court should not have allowed Bo Mims to testify due to the prosecution's failure to identify him until after the start of trial, and that Eddie Archer's testimony unfairly surprised him, as the prosecution failed to comply with former Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice.[2]

At Totten's trial, pawn shop owner Eddie Archer testified that, at the request of the Marshall County Sheriff's Department, he was keeping a lookout for some items, including a laptop, that had been stolen and were allegedly being sold in a particular area of town. Doc. #25-2 at 113-16. He stated that his friend Bo Mims lived in the identified area, and Archer asked Mims to cheaply buy any of the potentially stolen items and bring them to Archer. *Id*. at 116. After that conversation, Archer maintained, Mims brought him a laptop. *Id*. at 117.

However, in discovery, the prosecution misidentified prosecution witness Bo Mims as "Boo Hines." *See* Doc. #25-5 at 86. The prosecution realized the error and reported to the trial court the morning of trial following voir dire. Doc. #25-2 at 13. The prosecution requested a continuance to ensure sufficient time to subpoena Mims and have him testify at trial. *Id*. at 13. The defense objected, arguing that the prosecution had ample resources to prepare its case and should have had it ready for trial, and that the testimony of the witness who stated she bought the heater from Totten, if she were believed by the jury, would be sufficient to sustain the prosecution's burden of proof. *Id*. at 13-14, 17-18. Before the trial judge ruled on the requested continuance,

---

[2] The provisions of Rule 4.06 and the guidelines of *Box v. State*, 437 So. 2d 19, 23-26 (Miss. 1983) were later codified in Rule 9.04 of the Mississippi Uniform Rules of Circuit and County Court Practice, which states, in part, that when a party objects to the introduction of evidence that has not been previously disclosed, the trial court must grant the objecting party a reasonable opportunity to interview the witness, and if, after that opportunity, defense claims "unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance. . . or grant a mistrial." *Byrom v. Epps*, 817 F. Supp. 2d 868, 887 n.18 (N.D. Miss. Aug. 22, 2011); *see also Pilgrim v. Mississippi*, 19 So. 3d 148, 157 n.5 (Miss. Ct. App. 2009).

the prosecutor and defense counsel met outside of the courtroom. *Id*. at 20. When they returned, defense counsel announced that Totten rejected plea negotiations and desired to go to trial. *Id*. The trial court then denied the prosecution's request for a continuance, citing speedy trial concerns. *Id*.

Bo Mims ultimately testified at trial that after Eddie Archer asked him to be on the lookout for a computer stolen from a church, Totten came to his home and tried to sell him a computer. Doc. #25-3 at 41-43. At Mims' promise that Totten would be paid later, Totten left the computer with Mims, and Mims called Eddie Archer, who retrieved it the following day. *Id*. at 44-47. After Mims testified and was subject to cross-examination by defense counsel, the court asked defense counsel if he needed to confer with his client. *Id*. at 48. Defense counsel stated that "I asked the questions that he wrote out for me. I read them off right here on this notebook." *Id*.

On appeal, the Mississippi Supreme Court rejected Totten's allegations of error with regard to this claim, noting that defense counsel did not request a continuance, nor was the defense surprised by Mims' testimony. *Totten*, 166 So. 3d at 35-36. The court pointed to the following facts in the record regarding the lack of unfair surprise:

> Totten personally insisted that his attorney ask the following questions of Mims: 1) if Mims paid Totten anything when Totten brought Mims the computer, 2) whether Mims had done business with Totten before Totten brought Mims the computer, 3) why Mims thought it was stolen, and 4) the color of the computer.

*Totten*, 166 So. 3d at 36.

Here, the Court notes that while the disclosure of Mims as a witness was late, defense counsel did not object to allowing Mims to testify. Moreover, it is apparent that Totten was aware of the type of testimony Mims would provide, and Totten even prepared questions for his attorney to ask Mims. Therefore, he has failed to show any unfair surprise or undue prejudice as a result of Mims' testimony. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999) (holding state court's failure to properly apply its own procedural rules fails to raise a cognizable federal habeas claim

unless those rulings run afoul of a specific constitutional right or render the trial fundamentally unfair).

Additionally, Eddie Archer was identified in the prosecution's discovery response as a proposed witness well in advance of trial, and he was thoroughly cross-examined. *See* Doc. #25-5 at 84; Doc. #25-2 at 116-21. Totten has not demonstrated any undue prejudice or unfair surprise because Archer was allowed to testify. Accordingly, the Court finds that the decision rejecting these allegations fails to warrant relief under the AEDPA.

## G. Ground Eight

In Ground Eight, Totten claims that the trial court violated the hearsay evidentiary rule by allowing hearsay testimony regarding a medical terminology disk found inside the recovered computer. He also contends that he was not given an opportunity to cross-examine the alleged owner of the disk, in violation of the Confrontation Clause of the Sixth Amendment.

Totten has not demonstrated that the admission of testimony regarding the medical terminology disk was hearsay evidence. However, assuming *arguendo* that it could constitute such evidence, the Court notes that the Fifth Circuit has held that the "mere erroneous admission of prejudicial testimony does not, in itself, justify federal habeas relief unless it is material in the sense of a crucial, critical, highly significant factor, in the context of the entire trial." *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir. 1985) (citation and internal quotation marks omitted).

At trial, testimony was presented that the recovered stolen computer contained a medical terminology disk belonging to Rakestraw's wife. Doc. #25-2 at 133-34; Doc. #25-3 at 17, 26-27. In light of the other testimony and evidence introduced against Totten proving he committed the crimes, he has not established that the testimony regarding the disk was material to the outcome of his trial, even if the testimony were to be presumed error. For example, even if all testimony regarding the computer were excluded, testimony still linked Totten to the stolen heater. *See, e.g.*, Doc. #25-2 at 66, 101-05, 142-44. Therefore, the admission of testimony concerning a medical

terminology disk was not crucial, critical, or highly significant to the jury's determination, nor did it render Totten's trial fundamentally unfair.

Additionally, the Court notes that Rakestraw's wife offered no testimony against Totten, and she was not called as a witness by either side. Accordingly, Totten's Sixth Amendment right to confrontation was not violated. *See* U.S. Const. Amend. VI ("In all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him."). Accordingly, the Court finds that the decision rejecting these allegations fails to warrant relief under the AEDPA.

### H. Ground Nine

In Ground Nine, Totten argues that the prosecution violated his due process rights by presenting false evidence at trial and on appeal.

A conviction obtained using perjured testimony violates a defendant's Fourteenth Amendment Due Process Rights. *Mooney v. Holohan*, 294 U.S. 103 (1935); *Naupe v. Illinois*, 360 U.S. 264, 269-70 (1959). Before a due process violation exists, however, the false testimony must be found to have been knowingly offered. *Id.*; *see also United States v. Miranne*, 688 F.2d 980, 989 (5th Cir. 1982). Further:

> To establish a due process violation based on the State's knowing use of false or misleading evidence, [a petitioner] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. Evidence is "false" if, *inter alia*, it is "specific misleading evidence important to the prosecution's case in chief." False evidence is "material" only "if there is any reasonable likelihood that [it] could have affected the jury's verdict."

*Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997) (internal citations omitted).

First, Totten claims that Rakestraw lied regarding whether there were two separate incidents where his tools were stolen. At trial, Rakestraw initially testified that he knew his home had been burglarized while he was still out of town, because his wife went by the house and found that some of his tools were gone. Doc. #25-2 at 70-71. Later, the defense called Rakestraw during its case-in-chief, and Rakestraw testified that he did not believe that his wife had told him that some of the tools were missing approximately one week before he came home to discover the

burglary. Doc. #25-3 at 76. Rakestraw's testimony was inconsistent, but Totten has no proof that he lied or that the prosecution knew him to be offering false testimony.

The fact that Rakestraw's testimony was contradictory is insufficient to establish that the testimony was perjured. *See, e.g., Koch*, 907 F.2d at 531 (holding inconsistencies are insufficient to establish testimony was perjured).

Next, Totten claims that the prosecution committed perjury by stating in its brief that Rakestraw's wife testified at trial. The State concedes that it inadvertently committed a scrivener's error in its brief but argues that the mistake had no bearing on Totten's conviction or sentence. The Court agrees. The briefing error had no bearing on the jury's determination of guilt or the State court's resolution of the issues on direct appeal.

Third, Totten complains that the testimony of Bill Ellis stated that the recovered stolen computer was a Compaq computer, while Rakestraw testified that an Apex computer was stolen. Doc. #25-2 at 62; Doc. #25-3 at 17. Totten also claims that Ellis committed perjury by testifying inconsistently regarding how the laptop was recovered. *See* Doc. #25-3 at 12-18. However, Totten has not demonstrated that either witness lied, or that the prosecution knew the testimony to be false. Again, the Court notes that inconsistency in a witness' statement is a matter for the jury to resolve, and it is not sufficient to establish "false testimony." *See, e.g., Koch*, 907 F.2d at 531 (holding inconsistencies are insufficient to establish testimony was perjured).

Finally, Totten alleges that Investigator Cody Teel committed perjury by stating that Davis, the purchaser of the stolen heater, notified law enforcement of a heater she had purchased from Totten after hearing that Totten was being pursued by law enforcement. Doc. #25-2 at 101-03, 150. Totten has not presented the Court with any evidence that this testimony was perjured.

Accordingly, the Court finds that the decision rejecting these arguments does not warrant relief under the AEDPA.

I.  Grounds Ten, Eleven, Twelve, Thirteen, Fifteen, Sixteen, Seventeen, Eighteen,
Nineteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three,
Twenty-Four, and Twenty-Five

Totten raises numerous claims alleging that he received constitutionally ineffective assistance from his trial and appellate counsel.  Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief:  (1) demonstrate constitutionally deficient performance and (2) actual prejudice as a result of such ineffective assistance.  *Strickland*, 466 U.S. 668 (1984).  Deficiency is established when petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Id*. at 687-88.   This Court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Motley v. Collins*, 18 F.3d 1123, 1126 (5th Cir. 1994).  In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment.  *Strickland*, 466 U.S. at 689.

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome.  *Strickland*, 466 U.S. at 687, 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment.  *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986) (citation omitted).

On habeas review, the issue for the reviewing court is not whether the *Strickland* standard is met, but rather, whether the state-court's decision that *Strickland* was not met warrants relief under AEDPA standards.  *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

Accordingly, when a *Strickland* claim has been rejected on its merits by a state court, a petitioner "must demonstrate that it was necessarily unreasonable for the [state] Supreme Court" to rule as it did in order to obtain federal habeas relief. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). With these standards in mind, the Court considers Totten's ineffective assistance of counsel claims.

1. Ground Ten

In Ground Ten, Totten claims that his trial counsel was constitutionally ineffective for failing to object to improper comments made by the prosecution during closing argument.

The Fifth Circuit's test for prosecutorial misconduct requires a court to (1) first decide whether the prosecutor made an improper remark in context, and, if so (2) evaluate whether the remark affected the substantial rights of the defendant. *United States v. Gallardo-Trapero*, 185 F.3d 307, 320 (5th Cir. 1999) (citations omitted). "To determine whether the argument affected the defendant's substantial rights, [courts] examine (1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." *United States v. Simpson*, 901 F.2d 1223, 1227 (5th Cir. 1990).

Totten argues that the prosecutor made an improper statement by mentioning the terminology disk, which was not produced in evidence, and by vouching for the veracity of witnesses during closing argument. He otherwise generally claims that her statements were prejudicial.

Attorneys are afforded wide latitude in presenting closing argument. *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000). A review of the record in this case demonstrates that while the prosecutor argued inferences from the circumstances in this case, she did not "make explicit personal assurances of a witness's veracity." *United States v. Leslie*, 759 F.2d 366, 378 (5th Cir. 1985) (citation omitted). Therefore, the prosecution did not impermissibly vouch for witness credibility. Moreover, a prosecutor cannot be found to have improperly prejudiced a criminal defendant by arguing facts in evidence that support his guilt. Accordingly, the Court finds that the prosecutor made improper remarks given the context, and counsel acted reasonably in choosing

not to lodge an objection to the comments.  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."). Additionally, prior to closing, the jury was instructed that counsel's remarks were not evidence, and that "[a]ny argument, statement or remark having no basis in the evidence should be disregarded by you."  *See, e.g.*, Doc. #25-1 at 15-16.  Therefore, Totten has not established that counsel was ineffective, or that counsel's lodging of an objection would have yielded a different result.  Accordingly, the decision rejecting these allegations does not warrant relief under the AEDPA.

2. Grounds Eleven and Twenty-One

In Grounds Eleven and Twenty-One, Totten argues that his trial counsel was constitutionally ineffective for failing to object to the presentation of allegedly false testimony by prosecution witnesses and by the inadmissible hearsay testimony allegedly admitted at trial regarding the medical terminology disk.  He claims he was prejudiced by the prosecution's reference to the testimony regarding the disk throughout trial.

The Court has already determined that Totten failed to demonstrate that the prosecution offered false testimony, or that there existed a valid basis to object to the testimony regarding the medical terminology disk.  It is the jury's job to resolve inconsistencies between witnesses.  *See Dunn v. State*, 111 So. 3d 114, 116 (Miss. Ct. App. 2013).  Moreover, Totten has not demonstrated how he was prejudiced by the testimony or, how but for counsel's alleged errors, the outcome of his trial would have been different.  Rather, overwhelming evidence was offered at trial linking Totten to the items stolen from the victim.  Accordingly, the decision rejecting this claim does not warrant relief under the AEDPA.

3. Ground Twelve

In Ground Twelve, Totten argues that his trial counsel was ineffective in failing to object to Totten's lack of opportunity to inspect the physical evidence, including the recovered stolen

heater and laptop. He also asserts that counsel failed to object to the State's alleged failure to photograph the medical terminology disk and family photographs found in Rakestraw's laptop.

Totten has not demonstrated how such a review would have advanced his defense. He has presented no evidence that counsel was deficient on this basis. Moreover, as repeatedly noted, given the evidence against Totten, he has not demonstrated that a different result would have occurred had counsel raised these objections at trial. Accordingly, the decision rejecting this claim does not warrant relief under the AEDPA.

4. Ground Thirteen

In Ground Thirteen, Totten argues that trial counsel was constitutionally ineffective for failing to object to jury instruction S-5 because it differed from evidence presented at trial.

At trial, the prosecution submitted jury instruction S-5, which stated, in part, that the jury had to find that the stolen items "were the personal property of Corey Rakestraw." Doc. #25-1 at 36. At trial, defense counsel objected to jury instruction S-5, claiming the evidence showed that the recovered computer belonged to Rakestraw's wife. Doc. #25-3 at 118.

Rakestraw initially testified that the recovered stolen computer was the property of his wife, and he later testified that the item was owned by him and his wife. Doc. #25-2 at 62-63, Doc. #25-3 at 79. The trial court overruled defense counsel's objection, but the instruction was subsequently modified on other grounds and submitted as S-5A without objection. Doc. #25-3 at 119-20; Doc. #25-1 at 32. Totten has failed to establish that the jury instruction was erroneous[3] or that counsel was ineffective. Accordingly, the Court finds that the decision rejecting this claim fails to warrant relief under the AEDPA.

---

[3] Even if the instruction was incorrectly given, Totten would have to demonstrate that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process" for federal habeas relief to be granted. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). Totten's arguments fall decidedly short of this standard.

5. Ground Fifteen

In Ground Fifteen, Totten argues that he was denied his right to counsel when he "was confronted with the intricacies of the law and the advocacy of the public prosecutor." *See* Doc. #1 at 62. In support of this claim, Totten alleges that counsel erred in advising him that it would be harmful to his case to portray law enforcement officers and the prosecutor as liars.

A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (internal quotations and citations omitted). At Totten's trial, the prosecution's witnesses were thoroughly cross-examined, and there is nothing in the record to show that either the law enforcement officers or the prosecutor lied. Moreover, defense counsel consulted with Totten throughout trial before concluding his cross-examination of prosecution witnesses to determine whether Totten believed further questioning was necessary or desirable. *See, e.g.*, Doc. #25-2 at 108-09, 120, 149-50; Doc. #25-3 at 25, 48, 64. Totten has failed to establish deficient performance by counsel or resulting prejudice. Accordingly, the decision rejecting Totten's ineffective assistance of counsel claims on these grounds warrants relief under the AEDPA.

6. Ground Sixteen

In Ground Sixteen, Totten argues that his counsel was constitutionally ineffective in failing to make necessary objections and in failing to perfect an appeal on Totten's behalf. First, the Court has already determined that Totten's claims regarding counsel's failure to make objections to the physical evidence or testimony offered does not warrant relief. Totten has not demonstrated that counsel was deficient in his performance, or that but for his alleged failure to make objections, the outcome of Totten's trial would have been different. Furthermore, Totten's trial counsel did file a notice of appeal on Totten's behalf before his motion to withdraw was granted, and the Indigent Appeals Division of the Office of the State Public Defender represented Totten on appeal. *See*

Doc. #25-1 at 53, 59-60; Doc. #25-6 at 280-83.  Accordingly, the decision rejecting this claim does not warrant relief under the AEDPA.

7.  Ground Seventeen

In Ground Seventeen, Totten argues that his trial counsel was ineffective when counsel failed to make use of impeaching evidence and attempted to paint Totten's line of questioning as irrelevant.  Specifically, Totten notes that Rakestraw testified on direct examination that he received information that some of his property had been recovered before he got home, while during cross, he stated that he was informed that some of his items had probably been recovered while he was making out his complaint regarding the burglary.  *See* Doc. #32 at 23.  Totten argues that the Sheriff's Department could not have known that the property belonged to someone else prior to a complaint being reported, and that when counsel was asked to question law enforcement officials about their recovery of evidence before the complaint was formally filed, counsel drew attention to the fact that he was ordered to ask the question by his client.

At trial, there was testimony offered by Investigator Teel that Rakestraw's heater was not known to have been stolen until April 11, 2012, while the heater itself had been turned over to law enforcement days earlier.  *See* Doc. #25-2 at 142-49.  The following exchange occurred on cross-examination:

> [Defense counsel].  Assume the homeowner came back from Louisiana and discovered that his heater was stolen April 11 of 2012.  Assume that to be the testimony.  If that is true, then how could y'all know about the heater being stolen before then?
> [Teel].  Basically how that happened is when Ms. Annie Davis notified the Sheriff's Department in reference to the heater earlier that day, we had been involved in a pursuit with Mr. Jerome Totten.  She advised us that she had heard about the pursuit and that she assumed maybe it was stolen property.  That's where it came from.
> [Defense counsel].  All right, sir.
> [Defense counsel]:  Judge, for the record, I was ordered to ask that question by Mr. Totten.

Doc. #25-2 at 149-50.

The Court finds that Investigator Teel's testimony is supported by his investigation report, which clearly notes that Annie Davis turned over the heater because she heard law enforcement suspected Totten of a burglary, and she had purchased the heater from him. *See, e.g.,* Doc. #3 at 153; Doc. #25-2 at 142-150. Counsel followed Totten's express wishes regarding questioning, and there was no basis to impeach Teel's testimony regarding the timing of the heater's recovery. Therefore, Totten has not shown that his counsel was deficient or that the outcome of his trial would have been different absent the alleged error. Accordingly, the decision rejecting this claim does not warrant relief under the AEDPA.

8. Grounds Eighteen and Nineteen

In Grounds Eighteen and Nineteen, Totten claims that his trial counsel was ineffective in failing to investigate and challenge his arrest based on a lack of probable cause. However, he has not identified any facts or evidence that would support a valid challenge to the probable cause surrounding his arrest, and therefore, he has failed to demonstrate that any motion to suppress based on an alleged unlawful arrest would have been successful. Further, he has not identified evidence that was discovered because of his alleged illegal arrest that was later introduced at trial. *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (federal habeas petitioner alleging ineffectiveness with regard to Fourth Amendment claim must prove that his claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice).

Totten also asserts that counsel failed to adequately prepare for trial by making an independent investigation into the crimes charged, interviewing witnesses, and inspecting the evidence. However, he has failed to allege "with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Totten does not identify any defenses or facts warranting further investigation, any witnesses counsel should have interviewed, or what evidence should have been inspected, and he has not demonstrated that counsel could have gathered information from these

actions that would have changed the outcome of his trial. Rather, a review of the record shows that defense counsel conducted as vigorous a defense as possible in the face of the overwhelming evidence against his client. Totten has shown neither deficient performance nor resulting prejudice with regard to this claim.

Totten also claims that counsel rendered ineffective assistance by failing to file any pre-trial motions, including a motion to suppress the State's evidence. However, he has not identified an adequate basis upon which counsel could have filed such motions, and the Sixth Amendment does not require counsel to file meritless motions. *See United States v. Gibson*, 55 F.3d 173, 17 (5th Cir. 1995).

Accordingly, the Court finds that the decision rejecting these arguments fails to warrant relief under the AEDPA.

9.  Ground Twenty

In Ground Twenty, Totten argues that trial counsel was ineffective for failing to object to the prosecution's late witness disclosure of Bo Mims, and that counsel was ineffective in essentially conceding Totten's guilt in declaring the State's proof regarding the theft of the heater sufficient to convict Totten.

As the Court has already noted, Mims was not properly identified until the first day of trial, and the prosecution moved for a continuance to secure his presence at trial. *See* Doc. #25-2 at 13-17. In response to the request, defense counsel argued that the prosecution should have had its case ready, and that if the jury "were to believe [the prosecutor]'s witness on the heater, that would be sufficient to convict Mr. Totten. So, we would argue [the prosecutor] has enough proof to go forward[.]" *Id.* at 17-18.

It is entirely reasonable, given defense counsel's objection to the State's request for a continuance, to believe that defense counsel thought it would be advantageous to Totten if the State had to proceed to trial without a key witness. Totten has not demonstrated that such a tactic might not have been part of a sound trial strategy. Moreover, Totten rejected any attempt at plea

negotiations and stated his desire to continue with trial despite the late disclosure of Mims as a witness. *See id*. at 20. Finally, Totten has not demonstrated how any earlier knowledge or interview of Mims would have advanced his case. Therefore, he has not demonstrated any deficiency on the part of counsel with regard to this claim or any resulting prejudice. Accordingly, the decision rejecting this claim fails to warrant relief under the AEDPA.

10. Ground Twenty-Two

In Ground Twenty-Two, Totten argues that his trial counsel was constitutionally ineffective in failing to require the State to physically present the medical terminology disk at trial to verify that it was "the exact evidence in question." Doc. #32 at 29. He also appears to argue that defense counsel was constitutionally ineffective for failing to object to the fact that there was no opportunity to confront and cross-examine Rakestraw's wife.

Totten has failed to show that Rakestraw's wife bore any testimony against him which required her to be presented for cross-examination. *See Miller v. Denmark*, No. 3:14CV196-MPM-RP, 2017 WL 3897167, at *3 (N.D. Miss. Sept. 6, 2017) (noting Sixth Amendment guarantee of a criminal defendant's right to confront witnesses who bear testimony against him imposes affirmative duty on prosecution to call witness and present the witness for cross-examination). Moreover, the Fifth Circuit has held that "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimony evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim for failure to call a witness, the petitioner must name the witness, demonstrate the witnesses' ability and willingness to testify, and show that the testimony would have been favorable to a particular defense. *Id*. (quotation marks omitted). Here, Totten has failed this burden.

Additionally, Totten has not demonstrated that counsel had a valid basis on which to demand the actual physical production of the compact disk, nor has he demonstrated that the results

of his trial would have been different had the compact disk been produced. Accordingly, the Court finds that this claim fails to warrant relief under the AEDPA.

11. Ground Twenty-Three

In Ground Twenty-Three, Totten argues that his trial counsel was constitutionally ineffective in failing to require the prosecution to establish the proper chain of custody for the evidence. In support of this claim, Totten contends that there was a reasonable inference of tampering because there was no proof of the medical terminology disk allegedly found inside of the recovered computer.

"Breaks in the chain of custody go to the weight of the evidence, not its admissibility." *Jenkins v. State*, 997 So. 2d 207, 213 (Miss. Ct. App. 2008). Totten has not shown that there was a valid basis to have the disk testimony excluded, or how such exclusion would have affected his trial. Moreover, the application of state evidentiary rules — even an erroneous application — fails to raise a constitutional issue unless the error violates due process. *See Derden v. McNeel*, 978 F.2d 1453, 1458 (citation omitted). The admission of testimony regarding the disk was allowable within the trial court's discretion and did not run afoul of due process. Therefore, Totten can demonstrate neither deficiency nor resulting prejudice with regard to these issues. Accordingly, the decision rejecting this claim fails to warrant relief under the AEDPA.

12. Ground Twenty-Four

In Ground Twenty-Four, Totten argues that his trial counsel was constitutionally ineffective in failing to subject the prosecution's case to meaningful adversarial testing.

First, Totten alleges that trial counsel failed to make the objections Totten wanted lodged. However, the record demonstrates that Totten actively conferred with and participated with counsel throughout trial. *See, e.g.*, Doc. #25-2 at 108-09, 120, 149-50; Doc. #25-3 at 25, 48, 64. Defense counsel subjected the prosecution's witnesses to thorough cross-examination and raised objections throughout trial. Therefore, Totten has not demonstrated deficiency by counsel or resulting prejudice.

Next, Totten argues that trial counsel was constitutionally ineffective in failing to object when there was a variance between the evidence in the Indictment and the evidence presented at trial. However, this argument is conclusory and insufficient to support his claim. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case."). Totten has not demonstrated that counsel was deficient, or that he suffered prejudice because of this alleged error.

Third, Totten contends that the Indictment against him stated that one chainsaw was stolen, while jury instruction S-5A required the prosecution to prove that Totten had stolen "chainsaws." Doc. #25-1 at 7,32. However, Totten can demonstrate no prejudice because of this variance, as requiring the jury to find beyond a reasonable doubt that he stole *multiple* chainsaws was an advantage to the defense. Therefore, there can be no "obvious unfairness" to Totten by counsel's choice not to object to the variance. *Richards*, 566 F.3d at 564.

Fourth, Totten argues that trial counsel failed to object to Investigator Teel's testimony that he never talked to any "officers from Tate County about the case" because he did speak to the prosecutor at some point. Doc. #1 at 92. Totten also mentions Davis' testimony but fails to suggest what was objectionable about it. The Court finds that any such objections would have been meritless, and counsel cannot be found to have acted unreasonably in failing to lodge meritless objections. *Clark*, 19 F.3d at 966.

Next, Totten argues that his trial counsel failed to object to the trial court's statement that "all of the photographs that have been admitted have been properly authenticated and identified by the particular witnesses," as there was no proof of the medical terminology disk. Doc. #25-3 at 34. This is a frivolous argument. Any objection on this basis would have been meritless, and counsel cannot be found to have acted unreasonably in failing to lodge meritless objections. *Clark*, 19 F.3d at 966.

Finally, Totten suggests that this Court should presume prejudice to him under the standard set forth in *United States v. Cronic*, 466 U.S. 648 (1984). However, for the *Cronic* presumption

to apply, counsel's failure must be total. *See, e.g., United States v. Griffin*, 324 F.3d 330, 364, (5th Cir.2003) ("When the defendant complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the *per se* presumption of prejudice."). In this case, Totten was represented by counsel who participated fully in his trial. Therefore, this allegation is without merit. Accordingly, the decision rejecting these claims of ineffective assistance of counsel fails to warrant relief under the AEDPA.

### 13. Ground Twenty-Five

In Ground Twenty-Five, Totten argues that his appellate counsel was ineffective for failing to include trial exhibits, such as the photographs of the laptop or disk within, in the appellate record. However, he does not explain how its presentation would have altered the outcome of his appeal. Totten was able to litigate his direct appeal fully, even filing a *pro se* supplemental appellate brief that was considered by the Mississippi Supreme Court. *Totten*, 166 So. 3d at 35. Accordingly, he cannot demonstrate prejudice as a result of appellate counsel's alleged failure.

Totten also appears to contend that appellate counsel failed to argue on appeal that the prosecution made improper remarks at trial regarding the medical terminology disk found in the recovered stolen computer. However, the Court has already addressed the underlying claim and determined that the remarks did not rise to the level of prosecutorial misconduct. Therefore, counsel was not required to lodge an objection, and appellate counsel cannot be considered for failing to assert such an argument on direct appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) (counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"). Accordingly, the decision rejecting these claims fails to warrant relief under the AEDPA.

### J. Ground Fourteen

In Ground Fourteen, Totten argues that he was denied due process when the State allegedly argued facts outside the record on appeal. This is a conclusory argument that is insufficient to support his claim. *See Schlang*, 691 F.2d at 799. Regardless, the Court finds that Totten has failed

to demonstrate that any part of his criminal proceedings was fundamentally unfair, and he has failed to show that a violation of his Due Process rights occurred. *See Spencer v. Texas*, 385 U.S. 554, 563 (1967) ("[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial."); *see also Smith v. Phillips*, 455 U.S. 209, 221 (1982) (noting "touchstone of due process is fairness"). Accordingly, the decision rejecting these claims fails to warrant relief under the AEDPA.

### K. Ground Twenty-Six

In Ground Twenty-Six, Totten argues that the cumulative errors from his trial require a reversal of his convictions. Cumulative error may form the basis for federal habeas corpus relief where (1) the individual errors involve matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process. *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (quotation marks and internal quotation marks omitted). Errors that did not occur can have no cumulative effect. *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992). Here, Totten has failed to show error, or that any of the alleged errors undermined the fairness of his trial or the finding of guilt. Therefore, habeas relief is not warranted on this claim.

### IV.
### Certificate of Appealability

A petitioner must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim

that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). Applying this standard, the Court concludes that a COA should be denied in this case.

## V.
### Conclusion

Jerome Totten has failed to demonstrate that the adjudication of his claims by the State court resulted in a decision contrary to, or involving an unreasonable application of, clearly established Supreme Court precedent, or that the decision was based on an unreasonable determination of facts in light of the evidence presented. 28 U.S.C. § 2254(d). Therefore, it is hereby ORDERED that Totten's petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED. A separate final judgment will issue today.

SO ORDERED this 9th day of August, 2018.


 /s Sharion Aycock
UNITED STATES DISTRICT JUDGE